UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICK MILLER,<br><br>　　　　　　　　Plaintiff,<br>　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　　　　　Defendant. | CASE NO. C16-5977JLR<br><br>ORDER AFFIRMING DECISION TO DENY BENEFITS |

## I. INTRODUCTION

Plaintiff Nick Miller seeks review of the denial of his application for disability insurance benefits. Mr. Miller contends that the Administrative Law Judge ("ALJ") erred in evaluating Mr. Miller's severe impairments, the medical evidence in the record, and Mr. Miller's residual functional capacity ("RFC"). (Op. Br. (Dkt. # 8) at 2.) Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the court AFFIRMS Defendant Commissioner Nancy A. Berryhill's ("the Commissioner") final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

On June 12, 2012, Mr. Miller protectively filed an application for disability insurance benefits. (Administrative Record ("AR") (Dkt. # 3) at 21.) Mr. Miller's application was denied initially and on reconsideration. (*Id.*) After the ALJ conducted a hearing on August 19, 2014, the ALJ issued a decision finding Mr. Miller not disabled. (*Id.* at 21-30.)

In his decision, the ALJ utilized the five-step disability evaluation process,[1] and the court summarizes the ALJ's findings as follows:

> **Step one**: Mr. Miller did not engage in substantial gainful activity during the period from the alleged onset date of January 1, 1998, through his date last insured of March 31, 2003.
>
> **Step two**: Through the date last insured, Mr. Miller had the following severe impairments: chronic C5 radiculopathy, bilateral impingement syndrome, and history of carpal tunnel syndrome.
>
> **Step three**: Through the date last insured, Mr. Miller did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment.[2]
>
> **RFC**: Through the date last insured, Mr. Miller had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he needed to alternate between sitting and standing every 30 minutes. He could not perform repetitive handling and fingering. He could occasionally stoop and crouch. He could not perform overhead reaching bilaterally. He could not balance or climb ladders, ropes, or scaffolds. He needed to avoid even moderate exposure to hazards and vibrations.
>
> **Step four**: Through the date last insured, Mr. Miller was unable to perform any past relevant work.

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Step five**: Because jobs existed in significant numbers in the national economy that Mr. Miller could have performed through the date last insured, he was not disabled.

(*See id.* at 21-30.) The Appeals Council denied Mr. Miller's request for review, making the ALJ's decision the Commissioner's final decision.[3] (*See id.* at 1-7.)

## III. ANALYSIS

Pursuant to 42 U.S.C. § 405(g), the court must set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### A. Evaluation of Mr. Miller's Severe Impairments

Mr. Miller argues that the ALJ erred by failing to find some of his impairments to be severe at step two of the sequential evaluation process. (*See* Op. Br. at 5-7.) The court does not find any harmful error.

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856, at *3.

---

[3] The court omits the rest of the procedural history in this matter because it is not relevant to the outcome.

The claimant has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell*, 161 F.3d at 601.

The step-two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ must still consider all medically determinable impairments, not just those determined to be severe, when assessing a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *2. Therefore, when an ALJ finds in a claimant's favor at step two, any error in failing to determine other impairments to be severe is harmless so long as the ALJ considered the limitations stemming from those impairments throughout the remainder of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (finding that an ALJ's error is harmless where it is inconsequential to the ultimate disability determination).

Here, the ALJ found in favor of Mr. Miller at step two, determining that he had the severe impairments of chronic C5 radiculopathy, bilateral impingement syndrome, and history of carpal tunnel syndrome through the date last insured. (*See* AR at 24.) Mr. Miller argues that the ALJ erred by failing to find his back strain and epicondylitis to be severe impairments or to account for limitations stemming from those impairments throughout the remainder of the analysis. (*See* Op. Br. at 5-7.) Mr. Miller argues that a back strain diagnosed in 1996 resulted in several severe functional limitations. (*See id.* at 6.) However, a medical provider eventually diagnosed this back injury as C5 radiculopathy. (*See* AR at 2382-84.) The ALJ found that Mr. Miller suffered from the

severe impairment of C5 radiculopathy and considered the effects of this impairment in assessing Mr. Miller's RFC. (*See id.* at 24-28.)

Next, Mr. Miller argues that he suffered from epicondylitis during the relevant period. (*See* Op. Br. at 6-7.) However, the ALJ considered Mr. Miller's diagnosis of epicondylitis and noted that the diagnosis and Mr. Miller's complaints stemming from epicondylitis occurred after the date last insured. (*See* AR at 26-27.) A medical provider who diagnosed Mr. Miller with epicondylitis specifically noted that the impairment had a "fairly sudden onset" in April 2003, postdating Mr. Miller's date last insured. (*See id.* at 395.) Mr. Miller cites other medical records that referred to his epicondylitis, but the records do not establish an onset date within the relevant period. (*See* Op. Br. at 6-7 (citing AR at 400, 402, 1587, 1609, 1615).) Therefore, Mr. Miller fails to establish any harmful error in the ALJ's evaluation of Mr. Miller's severe impairments at step two or throughout the remainder of the analysis.

**B.  Evaluation of the Medical Evidence**

Mr. Miller also argues that the ALJ erred in evaluating the medical opinion evidence in the record. (*See* Op. Br. at 7-10.) Where the medical evidence in the record is not conclusive, resolving questions of credibility and conflicts in the evidence is solely the ALJ's responsibility. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

and making findings." *Id.* The ALJ may also draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

1. Stephen Egge, M.D.

Mr. Miller argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of examining physician Stephen Egge, M.D. (*See* Op. Br. at 9-10.) The court disagrees.

In May 2003, Dr. Egge examined Mr. Miller and opined that he was unable to perform work at any level due to arm and wrist injuries. (*See* AR at 1664-65.) The ALJ gave this opinion little weight regarding the relevant period because Dr. Egge offered it after the date last insured. (*See id.* at 28.) Dr. Egge's report specifically noted that the injury occurred in April 2003, after the date last insured. (*See id.* at 1665.) Dr. Egge did not indicate that any opined limitations related back to any period before April 2003. (*See id.*) Therefore, the ALJ provided a specific and legitimate reason supported by substantial evidence to discount Dr. Egge's opinion.

//

## 2. State Agency Medical Consultants

Mr. Miller also argues that the ALJ erred by giving too much weight to the opinions of the state agency medical consultants. (*See* Op. Br. at 8-9.) The court disagrees.

A state agency medical consultant is a "highly qualified" physician with expertise in evaluating "medical issues in disability claims." *See* SSR 96-6p, 1996 WL 374180, at *2. An ALJ must explain the weight given to the opinions in his decision. *See id.* Here, the consultants opined that any of Mr. Miller's impairments that existed prior to the date last insured were not severe enough to preclude all work activities. (*See* AR at 88.) The ALJ gave the consultants' opinions significant weight because they were "consistent with the limited treatment records in [Mr. Miller's] file during the period in question." (AR at 28.) Mr. Miller argues that the record showed that he had functional limitations for several months before the date last insured. (*See* Op. Br. at 8-9.) However, the records that Mr. Miller cites postdate the date last insured, do not establish a clear onset date of specific functional limitations, and in some cases reference Mr. Miller's condition worsening after an injury in April 2003, after the date last insured. (*See* AR at 397, 400, 588.) Therefore, Mr. Miller does not show that the ALJ erred by giving significant weight to the consultants' opinions.

## C. The RFC Assessment and Step-Five Finding

Mr. Miller argues that the RFC and step-five finding are not supported by substantial evidence due to the errors alleged above. (*See* Op. Br. at 10-12.) However, because the court finds that the ALJ did not err in evaluating Mr. Miller's severe

impairments or the medical evidence, the RFC and step-five finding are supported by substantial evidence and not in error. *See supra* §§ III.A, B.

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

Dated this 23rd day of May, 2017.

JAMES L. ROBART
United States District Judge

ORDER - 8